**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DENISE TUMELE,**

        **Plaintiff,**           **CIVIL ACTION NO. 06-CV-10605-DT**

**vs.**

                             **DISTRICT JUDGE GERALD E. ROSEN**

**ROBERT SCOTT FACILITY,**      **MAGISTRATE JUDGE MONA K. MAJZOUB**
**et. al,**

        **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION:**    This Court recommends that Defendant Monday's Motion to Dismiss or for Summary Judgment filed on January 14, 2009 (docket no. 100) be **GRANTED**.

**II.    REPORT:**

This matter comes before the Court on Defendant Monday's Motion to Dismiss or for Summary Judgment. (Docket no. 100). Plaintiff has responded to the motion. (Docket no. 103). The case was referred to the undersigned for all pretrial proceedings. (Docket no. 6). Defendant Monday's Motion for Summary Judgment is now ready for ruling. The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e).

    **A.    Factual Background**

These facts are taken from Plaintiff's Complaint filed under 42 U.S.C. § 1983. She is a prisoner of the State of Michigan. During the events underlying her claim, she was incarcerated at the Robert Scott Facility in Plymouth, Michigan. Plaintiff alleges that on May 6, 2004 she informed Unit Officer Tolliver that her assigned bunk bed was starting to break apart. On May 27, 2004 the

bed collapsed causing injury to her neck, back and lower back. Plaintiff alleges that she was "continually refused health care access" until June 22, 2004 when she saw Dr. Shawney who without examining her told her that there was nothing wrong with her. She claims that she presently suffers from pain and numbness. Plaintiff alleges that Physician's Assistant Singhal told her that she could have a pinched nerve, but that no diagnostic studies were done. Plaintiff says that she fears her condition will worsen and that she may become paralyzed. Plaintiff seeks as relief diagnostic studies and x-rays, physical therapy, pain relief, and compensatory, punitive, and future damages. Plaintiff identifies Defendant Monday as the "Unit Counselor/Resident Unit Manager."

**B.     Claims**

Plaintiff's Complaint and the copies of the grievances she filed raise claims of inadequate medical care and the deliberate indifference to a substantial risk of serious harm by officers not acting on her requests to repair her bed.

Defendant Monday filed an earlier Motion for Summary Judgment in which he argued that Plaintiff had failed to properly exhaust her administrative remedies against him. (Docket no. 64). This Court recommended that the motion be denied, and the district court accepted that recommendation. (Docket nos. 71, 78). Defendant Monday now files this second motion[1] arguing that he should be dismissed because Plaintiff failed to mention him in the body of her Complaint, because Plaintiff fails to show that he was aware that her bed was in need of repair before the bed

---

[1] The only matter determined against Defendant in his first summary judgment motion was that the Complaint was not subject to dismissal for failure to exhaust administrative remedies. (Docket no. 71). Therefore, there is no merit to Plaintiff's argument that collateral estoppel bars this second motion by Defendant Monday. (Docket no. 103 at 2-3).

broke, and because he is entitled to Eleventh Amendment immunity on all official capacity claims and qualified immunity on all individual capacity claims. (Docket no. 100 at 4).

### C. Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. (*Id.*). A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

Dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is appropriate when it is clear that no relief could be granted under any set of facts that could be proved consistent with Plaintiff's allegations. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In considering this motion, the Court must accept as true the well-pleaded factual allegations in

Plaintiff's complaint. (*Id.*). The Court does not have to accept as true legal conclusions or unwarranted factual inferences, however. (*Id.*).

**D.  Analysis**

**1.  Failure to State A Claim**

Defendant Monday moves to dismiss on the basis that Plaintiff's Complaint does not allege any wrongdoing by him. (Docket no. 100 at 7). The Court's review of Plaintiff's Complaint confirms that Plaintiff failed to make any allegations against Defendant Monday in the body of her Complaint. (Docket no. 1 at 4). A defendant against whom the Plaintiff fails to make any allegations in the Complaint is entitled to be dismissed from the action. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (where complaint alleges no specific act or conduct by party and complaint is silent as to party except for name in caption, dismissal is proper even for *pro se* plaintiffs); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991) (dismissing defendants because complaint filed *pro se* named them in caption but filed to allege specific conduct by them in allegedly wrongful actions).

However, Plaintiff attached to her Complaint copies of grievances she had filed which do contain allegations against Defendant Monday. Giving Plaintiff the benefit of a liberal reading of her Complaint due to her pro se status, the Court finds that the allegations against Defendant Monday in those attachments should be considered as part of her Complaint for the Rule 12(b)(6) analysis. *See Walch v. Adjutant General's Dep't of Texas*, 533 F.3d 289, 293 (5th Cir. 2008) (Rule 12(b)(6) analysis generally confined to review of complaint and proper attachments); *Boatner v. Henderson*, 1999 WL 1023742 (6th Cir. Nov. 4, 1999) (dismissal for failure to state claim affirmed considering complaint and attachments). Those allegations raise the issues of whether Defendant

Monday violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to possible harm resulting from failing to ensure that her bed was repaired promptly and by being deliberately indifferent to her serious medical needs when he allegedly ordered her to move to the top bunk in her cell despite her medical order for a lower bunk. Defendant does not argue that considering those allegations the Complaint fails to state a ground for relief against him. (Docket no. 100 at 7-8). Accordingly, the Court will consider whether summary judgment is appropriate based on the evidence in the record.

### 2.     Culpable State of Mind

Defendant Monday next argues that he is entitled to summary judgment because Plaintiff cannot show that he possessed a culpable state of mind. (Docket no. 100 at 8). An Eighth Amendment deliberate indifference claim has both an objective and subjective component. The objective component requires the plaintiff to show the existence of a sufficiently serious medical need. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The subjective component requires the plaintiff to show that the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the defendant drew the inference and then disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Once the defendant draws the inference, he must act or fail to act in a manner demonstrating reckless or callous indifference toward the plaintiff's rights before he is liable. *Sperle v. Michigan Dep't of Corrections*, 297 F.3d 483, 493 (6th Cir. 2002).

Defendant argues that Plaintiff has alleged no facts showing that he had reason to know and actual knowledge of impending harm as a result of Plaintiff's broken bed. (Docket no. 100 at 10). Defendant therefore claims that Plaintiff has failed to establish the subjective element of an Eighth

Amendment claim. Plaintiff alleges in the attachments to her Complaint that she talked to Officer Tolliver when her "bed broke initially." (Docket no. 1 at 17). Plaintiff also alleges that "springs fell off" her bed and she took three parts that came off the bed "to the officer." (*Id.*). Plaintiff further alleges that Officer Tolliver, and not Defendant Monday, exhibited deliberate indifference. (*Id.*). In a different attachment Plaintiff alleges that she had back surgery prior to coming to prison, that she fell through her top bunk injuring her back on May 27, 2004, and that she went to healthcare and was placed on a "lay-in" for a week. (Docket no. 1 at 22). She was also moved to a lower bunk because of her injuries. When another person was put in her cell, she was moved to the top bunk. Plaintiff claims that it was difficult and painful for her to climb up and down. Plaintiff allegedly "brought this to Mr. Monday's attention, and was blew off." (*Id.*). Plaintiff alleges that this shows deliberate indifference. (*Id.*).

In addition to these factual allegations in Plaintiff's attachments to her Complaint, Plaintiff submitted a Response to Defendant's motion which contains more factual allegations. (Docket no. 103). This submission was made under penalty of perjury, and therefore is properly considered on Defendant's summary judgment motion. (*Id.* at 8). Plaintiff alleges that she "reported the broken bed to RUM Monday," and he failed to take action to get it fixed. (*Id.* at 3). She also alleges that Defendant knew of her medical detail for a bottom bunk but still ordered her to move to the top bunk. (*Id.*). Defendant allegedly "saw pieces of the broken bed." (*Id.* at 6). Finally, Plaintiff alleges that Defendant "was told that the bed's pieces were increasing each day, and that the noise being made by the bed each time plaintiff laid on it was getting louder." (*Id.* at 7). Defendant was allegedly told "that sooner or later the bed was going to collapse, fall, break, etc." (*Id.*).

Two cases presenting similar facts shed light on the type of action or inaction which will lead to Eighth Amendment liability in situations where prison beds have collapsed, and prisoners were injured. In *Crist v. Wolfe*, 1986 WL 9555 (N.D. Ill. Aug. 21, 1986), a bed in a prison collapsed on the prisoner injuring his back. The prisoner alleged that the bed and springs, like 99% of the other prison beds, were "held together with torn pieces of sheets." (*Id.* at *1). The prisoner alleged that defendants knew the conditions of the beds but acted indifferently in bad faith. (*Id.* at *2). The court found that the prisoner failed to allege facts showing that defendants "had reason to know, let alone actual knowledge, of impending harm resulting from the condition of his bed." (*Id.*). Mere knowledge of the condition of the bed was "not enough to impute to them deliberate indifference to [the prisoner's] physical safety." (*Id.*).

In *McKnight v. McDuffie*, 2007 WL 1087280 (S.D. Ga. Apr. 9, 2007), the plaintiff was injured when the top bunk of a bed collapsed on top of him. He alleged that defendants acted with deliberate indifference in failing to repair the bed before it collapsed. Plaintiff alleged that he reported to one defendant that his bed was broken prior to the accident by stating that the "welds on the bed was [sic] broke." (*Id.* at *5). The defendant told the plaintiff that an officer would take care of the situation. Summary judgment was granted because the plaintiff failed to show that defendant's conduct rose above the level of mere negligence. (*Id.* at *1).

The knowledge that Plaintiff alleges Defendant Monday possessed about the condition of her bed does not differ materially from what the defendants knew in the above two cases. Defendant knew that three springs had fallen off Plaintiff's bed and that it was making loud noises when laid upon. This is not materially different from knowing that welds are broken on a bed or that the bed was being held together with pieces of torn sheets. There is no evidence that Defendant knew of the

impending harm. *See Crist*, 1986 WL 9555. There is no evidence that Defendant knew that beds had collapsed when they were in similar condition. The condition of Plaintiff's bed is not enough to impute deliberate indifference to Plaintiff's physical safety. (*Id*.).

Moreover, although Plaintiff claims in her Response that Defendant failed to act at all, previous submissions by Plaintiff tend to show otherwise. When Plaintiff responded to Defendant Monday's previous motion for summary judgment, she attached copies of grievances she had filed. (Docket no. 70). In one of these grievances Plaintiff states that when she told Officer Tolliver and Defendant Monday about the bed being broke, Officer Tolliver said that she would "put in and [sic] order." (*Id*. at 12). A day or two later after more complaints, "they" said that an order had been submitted. (*Id*.). The response to this grievance shows that by June 23, 2004 a "slab" had been put in the bed. The response further states that it is not known when the maintenance request was filled out. Plaintiff states that Defendant Monday holds a supervisory position as the resident unit manager. (Docket no. 103 at 6). Accordingly, these circumstances suggest that either Defendant Monday or an officer under his supervision placed a maintenance order to have Plaintiff's bed repaired and that the repair was accomplished, although not before Plaintiff fell. Defendant Monday is entitled to summary judgment on the issue of whether he was deliberately indifferent to the condition of Plaintiff's bed.

Plaintiff also alleges that Defendant Monday was deliberately indifferent to her serious medical needs by ordering her to the top bunk when she had a medical order for a bottom bunk. Plaintiff alleges only in very general terms what her serious medical needs might be. In the attachments to her Complaint she states that she fell and injured her back which caused swelling in her back making it painful for her to climb up to the top bunk. (Docket no. 1 at 22). In Plaintiff's

Response she states that Defendant "was aware" of her "serious injuries from falling through the broken bed," but still made her move to the upper bunk. (Docket no. 103 at 6). Plaintiff has not submitted any medical records showing that she was diagnosed as having any particular injury to her back as a result of the fall. In a grievance attached to her Complaint, Plaintiff states that a prison doctor had told her that "there was nothing wrong with" her when she complained of back pain from the fall. (Docket no. 1 at 37). Even assuming that Plaintiff has shown that she had a "serious medical need" as a result of her fall, which is in itself a stretch, she has failed to show that an issue remains for trial on whether Defendant was deliberately indifferent to such a need when he ordered her to a top bunk. There is no showing that Defendant was aware that a substantial risk of serious harm existed if Plaintiff were placed on the top bunk. There is no showing that the alleged swelling of Plaintiff's back was apparent to third parties such as Defendant.

Plaintiff had apparently been given a medical order for a bottom bunk of which Defendant was allegedly aware. According to Plaintiff's grievance she fell on May 27, 2004 and Defendant had her move to a top bunk on June 2, 2004. (Docket no. 1 at 22). Plaintiff states that she went to healthcare apparently on the day she fell and was placed on a "lay-in" for a week. (*Id.*). The week's lay-in would be ending around the same time that Defendant Monday told her to move to the top bunk. Therefore, the fact that Plaintiff was given an order for a bottom bunk for one week fails to show that Defendant Monday drew the inference that having her move to the top bunk about a week later would present a serious risk of harm to Plaintiff's health. *See Farmer*, 511 U.S. at 837. Accordingly, Defendant is entitled to summary judgment on the issue of whether he was deliberately indifferent to Plaintiff's back injury by having her move to the top bunk bed.

### 3. Immunities

Defendant also moves for summary judgment based on the fact that he is not a "person" under section 1983 when sued in his official capacity, and that he is entitled to Eleventh Amendment immunity in that capacity. (Docket no. 100 at 10-11). Defendant is correct that as a state official he is not liable for money damages when sued in his official capacity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Defendant also argues that he is entitled to qualified immunity in his individual capacity. This Court has found that Plaintiff has failed to establish a violation of her constitutional rights. Therefore, there is no need to consider whether qualified immunity applies. *See Lockett v. Suardini*, 526 F.3d 866, 878 (6th Cir. 2008) (based on determination that no constitutional rights were violated, no need to discuss qualified immunity). However, it is clear from the *Crist* and *McKnight* cases discussed above that, even if a violation were found as to the condition of Plaintiff' bed, the conduct complained of did not constitute a clearly established violation of constitutional law at the time it occurred. *See Bertl v. City of Westland*, 2009 WL 247907, slip op. at *4 (6th Cir. Feb. 2, 2009) (summing up qualified immunity analysis). In addition, the state of the law at the time does not allow this Court to conclude that Defendant's ordering of Plaintiff to the upper bunk bed constituted a clearly established violation of constitutional law when it occurred. Accordingly, Defendant would be entitled to qualified immunity in his individual capacity.

### III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver

of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 19, 2009         s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Denise Tumele and Counsel of Record on this date.

Dated: March 19, 2009         s/ Lisa C. Bartlett
                              Courtroom Deputy