UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DENISE TUMELE,**

        **Plaintiff,**　　　　　　　　**CIVIL ACTION NO. 06-CV-10605**

        vs.　　　　　　　　　　　　　**DISTRICT JUDGE GERALD E. ROSEN**

**ROBERT SCOTT FACILITY,**　　　**MAGISTRATE JUDGE MONA K. MAJZOUB**
**DOCTOR SAWHNEY, SHERILYN**
**BUTLER, MR. SINGHAL, DOCTOR**
**YAQOOB, MR. HONOR, OFFICER**
**TOLLIVER, and DARRELL MONDAY**

        **Defendants.**
_____/

**CORRECTED REPORT AND RECOMMENDATION**

**I.　RECOMMENDATION:** This Court recommends that Defendants Sawhney, Yaqoob, and Singhal's Motion for Summary Judgment (docket no. 115) be **GRANTED**.

**II.　REPORT:**

This is a *pro se* civil rights action filed by a Michigan state prisoner pursuant to 42 U.S.C. § 1983. (Docket no. 1). Defendants Sawhney, Yaqoob, and Singhal filed this Motion for Summary Judgment on July 1, 2009. (Docket no. 115). Plaintiff has responded to the motion. (Docket no. 120). Defendants filed a Reply Brief. (Docket no. 122). The case was referred to the undersigned for all pretrial proceedings. (Docket no. 6). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e). This matter is now ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B).

    **A.　Facts**

Plaintiff, an inmate at the Huron Valley Correctional Facility in Ypsilanti, Michigan, brings this action pursuant to 42 U.S.C. § 1983, alleging that the Defendants were deliberately indifferent

to her serious medical needs while she was incarcerated at the Robert Scott Facility in Plymouth, Michigan. Defendants Sawhney and Yaqoob, medical doctors, and Defendant Singhal, a physician's assistant, provided medical care to inmates at the Robert Scott Facility at the time of the incident.

The following facts are taken from Plaintiff's Complaint. Plaintiff alleges that on May 6, 2004 she informed Unit Officer Tolliver that her assigned bunk bed was starting to break apart. On May 27, 2004 the bed collapsed causing injury to her neck and back. Plaintiff alleges that she was "continually refused health care access" until June 22, 2004 when she saw Defendant Sawhney who without examining her told her that there was nothing wrong with her. She alleges that Defendant Singhal told her that she could have a pinched nerve, but that no diagnostic studies were done. Plaintiff asserts that the Defendants did not provide any medical care for her injuries and failed to order diagnostic tests. She claims that she presently suffers from pain and numbness. Plaintiff states that she is afraid that her condition will worsen and that she may become paralyzed. She seeks as relief diagnostic studies and x-rays, physical therapy, pain relief, and compensatory, punitive, and future damages.

In support of their Motion for Summary Judgment Defendants submitted affidavits and excerpts of Plaintiff's medical records. The medical records show that Plaintiff saw Defendant Sawhney for back pain on May 6, 2004, prior to her fall from the bunk bed. The May 6, 2004 progress note indicates that the Plaintiff had back surgery in 2001. Plaintiff requested a bottom bunk. Defendant Sawhney ordered an x-ray of the lumbosacral spine, which showed arthritis throughout the lower spine but no evidence of a fracture or bone abnormalities.

Plaintiff's medical records show that she was evaluated by a nurse in Health Care on May 27, 2004, following her fall from the bunk bed. The nursing note indicates that Plaintiff complained

of lower back pain but had no visible marks or injuries from the fall. The nursing note also states that Plaintiff was able to move all extremities, was able to ambulate, and had no complaints of numbness. Plaintiff took Motrin with some relief, and was given a detail for ice/warm compresses and no work. On June 10, 2004 Plaintiff was seen again by nursing for back pain and was referred to the medical service provider for pain.

The medical records show that Plaintiff was seen in Health Care numerous times following the bunk bed incident for various complaints, not all of which were related to back or neck pain. On three separate occasions after the fall, Plaintiff saw Defendant Sawhney. Plaintiff's first evaluation with Defendant Sawhney after the bunk bed incident occurred on June 22, 2004. The progress note indicates that Plaintiff informed Defendant Sawhney that she had surgery on her upper back in 2001 and had fallen from her upper bunk. Portions of the progress note are illegible, however it appears that Defendant Sawhney performed an examination of Plaintiff's back and found no evidence of back surgery. The progress note states that the Plaintiff was not in distress. Defendant Sawhney reviewed the x-ray taken before Plaintiff's fall and concluded that Plaintiff's back pain may be secondary to arthritis. Defendant Sawhney advised the Plaintiff to do stretching exercises and take Motrin.

Plaintiff's second evaluation with Defendant Sawhney occurred on October 11, 2004, where Plaintiff complained of numbness in her legs. The progress note states that Defendant Sawhney reviewed the x-ray taken before Plaintiff's fall, noted evidence of arthritis, and advised Plaintiff to do stretching exercises and use Ibuprofen and warm compresses. Plaintiff saw Defendant Sawhney for the last time on October 21, 2004. The progress note from that visit indicates that Plaintiff was looking for light duty detail. Defendant Sawhney believed Plaintiff's story of her fall had changed

3

and denied Plaintiff light duty.

The record shows that Plaintiff saw Defendant Yaqoob on one occasion following the bunk bed incident. On January 16, 2005, Plaintiff complained of numbness in her hands in the morning and told Defendant Yaqoob the story of how she had fallen through her bunk bed eight months earlier. The progress note indicates that Plaintiff had been off Motrin for over one month. The progress note shows that Plaintiff had no local tenderness in her back and had good range of motion in her lower extremities. Defendant Yaqoob prescribed Motrin and warm compresses.

Plaintiff's medical records show that she was scheduled to see Defendant Singhal on June 28, 2004. The progress note indicates that the appointment was cancelled because the Plaintiff had been seen by Defendant Sawhney six days earlier for the same problem. The medical records and Defendant Singhal's affidavit indicate that Defendant Singhal did not evaluate Plaintiff medically and had no further involvement with the Plaintiff's care.

Plaintiff was transferred to Huron Valley Correctional Facility in February 2005. The record shows that Plaintiff has been evaluated by Health Care at the Huron Valley Correctional Facility related to back pain. A progress note dated April 6, 2005 indicates that a thorough examination of Plaintiff was conducted which showed that Plaintiff's heel and toe walk and deep knee bend were intact. No back pain was noted with knee straightening. The examiner's assessment was right sacroiliac pain, chronic secondary to poor posture with some symptom exaggeration. Proper posture and movement were taught and a bottom bunk was denied. Subsequent health care assessments conducted at Huron Valley Correctional Facility show that Plaintiff has presented with subjective symptoms of pain but no objective findings of pain. Progress notes indicate that Plaintiff complains of pain but upon evaluation she is observed to walk without a limp, has no pain with forward

bending, has shown no apparent distress, has full range of motion, no spinal abnormalities, and no facial grimace or other pain behaviors. A September 9, 2005 Radiology Report shows mild degenerative change with no evidence of fractures or other bone abnormalities. Plaintiff has been provided with an extra mattress and a back brace. She has been instructed to use mild pain relievers and warm compresses, and has been taught proper exercises and posture.

### B. Standard

Summary Judgment is appropriate under Federal Rule of Civil Procedure 56(c) where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

### C. Analysis

A state has an obligation to provide medical care for individuals it incarcerates and a

"deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 103-04 (1976) (internal citation and quotation marks omitted). To sustain a claim of inadequate medical treatment, a prisoner must demonstrate that the defendants acted with deliberate indifference to her serious medical needs. *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897 (6th Cir.2004) (citations and internal quotation marks omitted). When the need for medical attention is not obvious, "the seriousness of a prisoner's medical needs may also be decided by the effect of delay in treatment." *Id.* at 897-98 (emphasis omitted). In those cases, " [a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical information in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Ky.,* 238 F.3d 739, 742 (6th Cir.2001); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

In the present case the Plaintiff has failed to meet both the objective and subjective component of the Eighth Amendment. Objectively, Plaintiff's need of medical treatment was not so obvious that a lay person would easily recognize that she required medical attention. While the Plaintiff complained of back pain following her fall, the record shows that she had no visible marks or injuries, was able to move all extremities, ambulate, had no complaints of numbness, and received relief from Motrin. Additionally, Plaintiff has not been diagnosed with a medical condition that requires treatment beyond what Defendants Sawhney and Yaqoob provided - mild pain medication, warm compresses, and proper exercise. Furthermore, Plaintiff has produced no medical proof that

she has suffered any detrimental effect as a result of the Defendants' treatment of her condition, or their alleged failure to properly test and refer her to appropriate specialists. The x-ray conducted at Huron Valley Correctional Facility after the bunk bed incident confirms that Plaintiff suffers from mild degenerative change of the lower spine with no spinal fractures or bone abnormalities. She continues to be assessed as having a history of chronic back pain secondary to poor posture or mild arthritis. Additionally, medical evaluators continue to treat her condition with mild pain medication, warm compresses, and instruction on proper posture and exercise. In summary, Plaintiff has not demonstrated a sufficiently serious medical need to trigger an Eighth Amendment violation.

Even if Plaintiff had met the objective component of her claim, she has failed to demonstrate that the Defendants were deliberately indifferent to her medical needs. An official acts with deliberate indifference when he consciously disregards an excessive or substantial risk to inmate health or safety. *Id.* at 837. "When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (citation and internal quotation marks omitted).

Plaintiff's conclusory allegation that the Defendants' treatment of her medical condition was so cursory as to amount to no treatment at all is not supported by the record. As already stated, the record shows that Defendants Sawhney and Yaqoob medically evaluated the Plaintiff by physically examining her and reviewing her past medical history, and they treated her complaints with pain medication, instructions for warm compresses, and training on proper exercises. Defendant Singhal did not evaluate Plaintiff medically, however Plaintiff has not shown that the cancellation of her appointment with Defendant Singhal was in any way improper or caused her any detrimental effect.

7

Furthermore, Plaintiff has offered no proof that demonstrates that the Defendants were aware of an excessive or substantial risk to her health and made a conscious decision to disregard the risk.

Plaintiff has produced no evidence, apart from the allegations in her Complaint, to support any inference that she suffered from a serious medical need and that Defendants Sawhney, Yaqoob, and Singhal were aware of facts from which they could and did draw the inference that a substantial risk of serious harm existed to Plaintiff. Plaintiff's evidence fails to create a genuine issue of material fact as to whether the Defendants violated her Eighth Amendment rights. Accordingly, her Complaint should be dismissed.

### III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response

proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: January 27, 2010         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Denise Tumele and Counsel of Record on this date.


Dated: January 27, 2010         s/ Lisa C. Bartlett
                                Case Manager